BAKER, Judge,
with whom ERDMANN, Judge,
joins (dissenting):
There is no per se rule against a reporting senior and a subordinate sitting on the same court-martial panel. See United States v. Wiesen, 56 M.J. 172, 175 (C.A.A.F.2001). The mere existence of a senior-subordinate relationship does not require a per se disqualification; rather, the decision rests on the context and is rooted in the public’s perception of the deference accorded to military officers.
The problem in this case is that Appellant was tried and convicted by a three-member panel composed of a company commander, that commander’s company gunnery sergeant, and a senior enlisted member from another command. That is a structure that looks more like “company office hours” (nonjudicial punishment) than a military court-martial.
There is a reason the Military Judges’ Benchbook includes voir dire questions regarding the reporting chain of command. Dep’t of the Army, Pam. 27-9, Legal Services, Military Judges’ Benchbook ch. 2 § V, para. 2-5-1 (2010). The reason is not found in a per se rule of exclusion; nor out of concern that military members might compromise their integrity for a better fitness report. Rather, some military relationships are just too close to sustain public or military confidence in the fair administration of justice where such members sit together. As stated in Wiesen:
[t]he focus is on the perception or appearance of fairness of the military justice system. At the same time, this Court has suggested that the test for implied bias also carries with it an element of actual bias. Thus, there is implied bias when most people in the same position would be prejudiced.
56 M.J. at 174 (citations and quotation marks omitted). That was the case in Wiesen and it is the case here.
The problem with the majority’s analysis is that it treats the reporting chain of command like a civilian human resources department might treat it. The administrative chain of command is not a sterile concept, comprised of line diagrams and fitness reports. The analysis is divorced from the reality of military life. This case is not about fitness reports; it is about the special relationship, particularly in Marine Corps life, which exists in a company headquarters among the company commander, his executive officer, the first sergeant, and the company gunnery sergeant.
The bond among these leaders may be strong or it may be weak. They may respect each other; they may not. It need not matter. Whatever the actual rapport among *464 these leaders in a given company, the interplay is constant, the bond unique, and the opportunity for influence or resentment continuous. We should, however, recognize that these relationships permeate company grade life. The point is that in a Marine company the relationship between the commanding officer and the company gunnery sergeant holds a special place.
The majority avoids the special nature of company grade relationships in the Marine Corps by asserting that defense counsel only objected to the nature of the “reporting relationship” between Captain Stojka and Gunnery Sergeant Walston. United States v. Bagstad, 68 M.J. at 461-62 (C.A.A.F.2010). In other words, defense counsel forfeited any objection that extended beyond the drafting of fitness reports, because he did not specifically raise “the Gunny objection.” This argument presumes that the military judge, a Marine lieutenant colonel, did not understand the relationship between a company gunnery sergeant and the company commander. Although a civilian judge may not be familiar with this relationship, a military judge does not need an explanation from counsel concerning “the general nature of relationships between company commanders and their gunnery sergeants.” Bagstad, 68 M.J. at 463.
The majority also addresses the issue by arguing that at the time the defense objected the panel consisted of four members only two of which came from the same company. Id. at 462. Military judges are not required to be prescient, but they are required to think one step ahead. Here, the initial panel was composed of only five members. Thus, it should not have required omnipotence on the part of the military judge to anticipate the possibility that two members of the same company headquarters could end up on a three-member panel.[1]
Whatever the public might perceive regarding the appearance of fairness in the military justice system, and I am confident “the public” would find the composition of this three-member panel dubious, I am certain that a junior enlisted Marine would think a panel composed like the one in this case was anything but fair. Therefore, I respectfully dissent.

. As in Wiesen, 56 M.J. at 176, the record does not reflect an exigent or military circumstance limiting the pool of available members or requiring selection of these particular members to the panel.